(Opinion published 52 N. W. Rep. 912.)

ALFRED F. WEBSTER *vs.* MILO J. LUTHER *et al.*

Argued May 4, 1892. Decided May 24, 1892.

**Soldier's Right to Additional Land is Assignable.**

The right given by U. S. Rev. Stat. § 2306, to enter additional lands sufficient to make up, with the original homestead entry, 160 acres, is assignable.

Appeal by plaintiff, Alfred F. Webster, from a judgment of the District Court of St. Louis county, *Ensign,* J., entered October 17, 1891.

Defendants Milo J. Luther and Louis Rouchleau claimed to own lots one (1) and two (2) in section eighteen, (18,) T. 62, R. 14, containing ninety-two and a half acres in St. Louis county. They derived title as follows: Mary A. Robertson, of Benton county, Missouri, widow of James A. Robertson, deceased, was entitled under U. S. Rev. Stat. § 2306, to one hundred and twenty acres of the public land, additional to her original homestead entry of forty acres in said Benton county. On April 28, 1880, she gave to James A. Boggs a power, to act as her attorney to sell and convey the land she might obtain under her said right, and receive pay for it; and in the same instrument she assigned and released to Boggs, the proceeds of any such sale. On April 7, 1887, her application was filed in the local land office at Duluth, to enter the land above described, and on that day the receiver's final receipt was issued to her. On the same day Boggs, as her attorney, conveyed an undivided half of the land in her name, to each of the defendants. The power of attorney and deeds

were duly recorded April 15, 1887. The patent for the land was issued to her September 21, 1888.

Plaintiff claimed title to the land under a quit claim deed to him from Mrs. Robertson, executed in Benton county, Missouri, October 17, 1890. The land was vacant and unoccupied. The action was under 1878 G. S. ch. 75, § 2, as amended, and was tried by the Court July 6, 1891. Findings were filed October 7, 1891, and judgment was entered for defendants that they had the title.

*J. L. Washburn,* for appellant.

Whatever act Mr. Boggs does under the so-called power of attorney, he does, not for the benefit of the donor, but for himself. Nothing was to accrue to her; no further act was to be done that would benefit her, and whatever induced the execution of the contract, she was never to receive anything further. Thereafter the fruits and benefits of the gift of the government, were to go to Boggs. It states no consideration, but is sealed. It evidenced either a gift or a sale, it matters little which. The instrument is utterly null and void, as being in contravention of the homestead laws of the United States, and against public policy. *Allen* v. *Merrill,* 8 Land Dec. 207, 223; *Allen* v. *Merrill,* 12 Land Dec. 138; *Cook* v. *Lindsay,* 57 Texas, 67; *Brown* v. *Simpson's Heirs,* 67 Texas, 225.

An attempt has been made to separate U. S. Rev. Stat. § 2306, from the remaining sections of the homestead laws. The Department of the Interior is given jurisdiction of the disposition of the public lands, and is charged with the duty of establishing a procedure in harmony with the spirit of the law, to give the same force and effect, and such procedure becomes eventually a part of the land laws. U. S. Rev. Stat. §§ 449, 453; *Vantongeren* v. *Heffernan,* 5 Dak. T. 180; *Poppe* v. *Athearn,* 42 Cal. 607.

The contemporaneous and uniform construction of a law by executive officers charged with its execution, is entitled to great weight; and while Courts are not to be bound by such a construction, they have generally given the construction placed upon such a law by such officers great consideration. Courts will not overrule such construction without cogent reason. The uniform construction for twenty

years placed upon these laws by those charged with their execution has a controlling force. *Hastings, etc., R. R. Co.* v. *Whitney,* 34 Minn. 538, 132 U. S. 357; *United States* v. *Hill,* 120 U. S. 169, 183; *United States* v. *Philbrick,* 120 U. S. 52; *Brown* v. *United States,* 113 U. S. 568; *Edwards* v. *Darby,* 12 Wheat. 206; *United States* v. *Moore,* 95 U. S. 760; *United States* v. *Burlington, etc., R. Co.,* 98 U. S. 334; *State* v. *Batchelder,* 5 Minn. 223, (Gil. 178.)

Therefore the construction placed upon these laws, and particularly those with reference to additional homesteads, by the Land Department of the United States, is entitled to the weight of judicial decision, in the examination of this case. Circulars of June 13, 1872; August 5, 1874; May 17, 1876; May 22, 1876; July 10, 1876; February 17, 1877; March 10, 1877; September 1, 1879, and February 13, 1883. It is seen from these circulars that in official instructions and in the administration of these laws, the department has universally adhered to the personal character and nonassignability of these rights. The construction placed upon these laws by the department is further and unequivocally set forth in sundry important decisions. *In re Wm. French,* 2 Land Dec. 235–237; *In re Ruland's Children,* 2 Land Dec. 241; *In re Lars Winqvist,* 4 Land Dec. 323; *Smith Hatfield et al.,* 6 Land Dec. 557; *J. B. Haggin,* 7 Land Dec. 287; *Hoffman* v. *Barnes,* 8 Land Dec. 608; *J. W. Jones,* 9 Land Dec. 195; *John M. Walker et al.,* 7 Land Dec. 565, and 17 C. L. O. 14.

The decisions of the Courts show that they have taken the same view of these rights as the department. The right is a personal one, cannot be transferred or assigned to another, nor be the subject of traffic. Prior to entry and final proofs and full compliance with the law there can be no alienation, and all attempts to transfer the right, or render it effectual for another's benefit, are void, and no right can be acquired thereby. *Nichols* v. *Council,* 51 Ark. 26; *Mackintosh* v. *Renton,* 2 Wash. T. 121; *Mackintosh* v. *Renton,* 3 Wash. T. 431; *Anderson* v. *Carkins,* 135 U. S. 483; *Marshall* v. *Cowles,* 48 Ark. 362; *Shorman* v. *Eakin,* 47 Ark. 351; *Warren* v. *Van Brunt,* 19 Wall. 641; *Cox* v. *Donnelly,* 34 Ark. 762; *Weeks* v. *White,* 41 Kan. 569; *Brown* v. *Kennedy,* 12 Colo. 235; *Huston* v. *Walker,* 47 Cal.

484; *Damrell* v. *Meyer*, 40 Cal. 166; *Bass* v. *Buker*, 6 Mont. 446; *Brewster* v. *Madden*, 15 Kan. 249.

The only cases really holding any doctrine contrary to that asserted by the plaintiff upon this branch of the case are *Mullen* v. *Wine*, 26 Fed. Rep. 206, and *Rose* v. *Nevada, etc., Wood & Lumber Co.*, 73 Cal. 385. The law enacted April 4, 1872, 17 U. S. Stat. p. 49, was amended June 8, 1872, 17 U. S. Stat. p. 333, so as to confine the right to additional tracts, to land contiguous to the original homestead. But as it was found that most of those who were entitled to the benefits of the act would be deprived thereof by reason of the contiguous lands being already taken up, this restriction was removed March 3, 1873, 17 U. S. Stat. p. 605. The section became part of the homestead laws. By the enacting clause of the law of 1872, it became ingrafted upon and into the homestead law of 1862.

*Jaques & Hudson,* for respondent.

Mary A. Robertson, in executing a power of attorney, authorizing a conveyance of land to be acquired thereafter by her, did nothing in itself wrong or in contravention of the laws of the United States or against public policy. The law does not favor restraints upon alienation, and nothing short of a positive provision to that effect will justify the court in holding that a statute imposes such restraints. *Townsend* v. *Fenton*, 30 Minn. 528; *Knight* v. *Leary*, 54 Wis. 459.

The fact is that the land in question was not entered under the United States Homestead Act of May 20, 1862, 12 U. S. Stat. p. 392; and none of the restrictions of that act have been violated by the execution of the instrument. The land in question was entered under 17 U. S. Stat. pp. 49, 333, and 605. This act is no part of the homestead act of 1862, and a person seeking the benefit of the act is not required to comply with the provisions of that act, nor is he required to make either of the affidavits required by the Act of 1862, and the reason for the rule that a homesteader cannot alienate his homestead before final certificate issues, does not exist as to an entry of land under the Act of April 4, 1872, as amended. If these affidavits were not required by the law, the fact that the department attempted to construe or legislate the requirement of af-

fidavits into the law, will not make the requirement part of the law. Mary A. Robertson could contract to sell the land before entry, and could execute a power of attorney before entry, authorizing the attorney to convey the land after entry. *Dole* v. *Wilson,* 20 Minn. 356, (Gil. 308;) *Doe* v. *Wilson,* 23 How. 457.

The question before the Court is merely a question of statutory construction, and the statute in question is in itself sufficient, to show that the instrument in question is free from any taint of illegality, and that the decision must be in favor of the defendants upon this question without regard to authorities. The following sustain the construction for which we contend: *Mullen* v. *Wine,* 26 Fed. Rep. 206; *Rose* v. *Nevada, etc., Wood & Lumber Co.,* 73 Cal. 385; *Knight* v. *Leary,* 54 Wis. 459.

An inspection of the cases cited by plaintiff shows that only two directly sustain the appellant's theory of this case, viz.: *Nichols* v. *Council,* 51 Ark. 26; *Macintosh* v. *Renton,* 2 Wash. T. 121, and 3 Wash. T. 436.

GILFILLAN, C. J. This is the case of a right to make an additional entry of lands given to a soldier homesteader under U. S. Rev. Stat. § 2306, being section 2 of the act of April 4, 1872, entitled "An act to enable honorably discharged soldiers and sailors, their widows and orphan children, to acquire homesteads on the public lands of the United States," as that section was amended by the acts of June 8, 1872, and March 3, 1873. Taking the instrument executed by Mary A. Robertson, the person entitled to the additional entry, to James A. Boggs, to have been intended to be not merely a power of attorney to sell and convey the lands after they should be located, but also as an assignment of the right to make the entry, so that the power to convey was irrevocable, the case presents directly the question, may such right to enter be assigned so as to bind the parties? That the government is bound by such an assignment, so that the assignee may make the entry in his own name, is another question. The rulings of the land department seem to be uniform, to the effect that in administering its business it need take no account of such assignments.

v.50M.—6

That the right given by the section referred to is in the nature of property, whatever restrictions congress, from motives of policy, may have put upon it, cannot be doubted; and as such it is subject to the full power of the owner to dispose of it, unless that power is expressly or impliedly limited. The general homestead law (Act May 20, 1862) does not expressly prohibit alienation before the patent shall issue, but its requirements in respect to residence and cultivation, and the making of proofs and affidavits, are such as to compel the conclusion that, until the application for the patent is allowed, the right given by it shall be inalienable. The homesteader cannot, without perjury, make, after alienation, the affidavit required of him upon such application. Section 1 of the act of 1872 requires compliance with the provisions of the act of 1862, except as therein modified. Section 2 reads: "That any person entitled, under the provisions of the foregoing section, to enter a homestead, who may have heretofore entered under the homestead laws a quantity of land less than one hundred and sixty acres, shall be permitted to enter, under the provisions of this act, so much land as, when added to the quantity previously entered, shall not exceed one hundred and sixty acres." This act was amended by the act of June 8, 1872, the only change in section 2 being the insertion after the words "so much land" of the words "contiguous to the tract embraced in the first entry." Why this change was made, unless to make the section harmonize with the clause, "to enter under the provisions of this act," it is difficult to conceive. At any rate, after that amendment, and possibly before it, with the clause just quoted in the section, the right given would, in nine cases out of ten, be useless, as the homesteader might not be able to comply with the requirements of the section. By the act of March 3, 1873, the section was again amended by striking out the words "under the provisions of this act," and the words "contiguous to the tract embraced in the first entry." As so amended, the section certainly permitted what for convenience we may call the "additional right" to be located upon any unappropriated public lands, wherever situated; and as so amended there was nothing in it to indicate that, in respect to the additional right, compliance with the provisions of section 1 was re-

quired. The striking out of the words "under the provisions of this act" is significant. Apparently, at least, those words made it necessary to do, in order to secure the additional land, what is required by section 1 to secure the first or original entry, to wit, compliance with the provisions, except as modified, of the act of 1862. The retention of those words might have gone to defeat the purpose of congress to permit the "additional right" to be located on any unappropriated lands, however distant from the first entry. We think the clauses were struck out, so that the right to the additional land should depend solely on the right to make an entry under section 1, and the fact that the first entry was of less than one hundred and sixty acres, and so that, those conditions existing, nothing should be required of the homesteader beyond claiming the additional right. There being nothing in the terms of the section requiring the things specified in the act of 1862, to wit, the making of proofs, affidavits, etc., is there anything in the policy of the government in respect to the subject-matters of the various acts referred to which raises the presumption that congress intended any of the requirements of the act of 1862 to apply to the "additional right?" or intended the feature of inalienability impressed on the homestead entered under the act of 1862, or the first section of the act of 1873, should attach to the "additional right?"

The purpose of congress in giving the right to enter and acquire a homestead under the act of 1862, and the first section of the act of 1872, was not merely to confer a benefaction on the citizen, or discharged soldier or sailor. There was also the purpose to secure, so far as possible, a *bona fide* settler on the public lands, to promote the peopling and cultivation of those lands. It was to prevent the evasion of this result that the person applying to enter a homestead is required to make affidavit that the application is made for his or her exclusive use and benefit, for the purpose of actual settlement and cultivation, and not, either directly or indirectly, for the use or benefit of any other person, and on applying for the patent to make proof of residence on and cultivation of the land for five years, and an affidavit that no part of the land has been alienated; and it is provided that the land shall not be taken for debts, and that upon

any change of residence or abandonment of the land for more than six months the lands shall revert. The end in view was the peopling of vacant public lands with settlers owning and cultivating their own homes.

To secure settlers or require residence or cultivation was no part of the end in view in giving the additional right under the section as amended in 1873. No residence on or cultivation of the land as a condition of securing the additional right was intended. It was a mere gratuity. There was no other purpose but to give it as a sort of compensation for the person's failure to get the full quota of one hundred and sixty acres by his first homestead entry. There is no reason to suppose it was intended to hamper the gift with conditions that would lessen its value, nor that it was intended to be made in any but the most advantageous form to the donee. After the right was conferred, it was immaterial to the government whether the original donee should continue to hold it, or should transfer it to another. Or, rather, as policy requires the peopling of the vacant public lands, and as it could not be expected or desired that the homesteader should abandon his first entry to settle upon the additional land, it would be more for the interest of the government that he should be able to assign his additional right, so that it might come to be held by some one who would settle upon the lands.

We are therefore of opinion that, as between the parties, an assignment of the right is valid.

Judgment affirmed.

(Opinion published 52 N. W. Rep. 271.)